IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

       v.

PHILIP BADALAMENTI,

        Defendant.

No. 03:11-CR-00269-HZ

OPINION & ORDER

Gerald M. Needham
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

    Attorney for Plaintiff

Scott M. Kerin
US Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

    Attorney for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Defendant Philip Badalamenti is charged with two counts: (1) On-line Enticement in violation of 18 U.S.C. § 2422(b) and (2) Interstate Travel for Illicit Sexual Purposes in violation of 18 U.S.C. § 2423(b). Defendant moves to dismiss the indictment (#32) and moves to suppress statements (#30) that he made to police officers. An evidentiary hearing was held on October 22, 2012. I deny the motions.

## BACKGROUND

When Defendant was 52 years old, he met K.L., a 16-year old girl, through an iPhone application that paired people who wanted to chat about sex and "hook-up" with one another. Defendant was aware of K.L.'s age. The chats between Defendant and K.L. were sexual in nature. On June 16, 2011, K.L. gave Defendant her address during a telephone conversation. The next day, Defendant drove from Battle Ground, Washington to Newberg, Oregon to visit K.L. At approximately 7:00 a.m., Defendant called K.L. to tell her he would be at her house soon. Defendant arrived at K.L.'s house and knocked on the door. K.L. hid in her room and called her uncle, Josh Findley, who is a Homeland Security Investigations Special Agent. Findley went directly to K.L.'s house.

By the time Findley arrived at his niece's house, Defendant had already left. While Findley was still at the house, Defendant sent K.L. a message on her phone. Findley told K.L. to text Defendant to come back to her house. When Defendant returned, Findley answered the door. Findley identified himself as a federal agent, patted Defendant down, and called the police. Findley was armed, but he did not display his gun or tell Defendant that he was armed. While waiting for the police to arrive, Findley testified that Defendant apologized repeatedly.

2 - OPINION & ORDER

Findley told Defendant that he was here as a concerned family member and not as law enforcement. He also told Defendant to stop talking.

Three officers from the Newberg-Dundee police department responded to the call separately. Officer Dave Junkin was the first to arrive at approximately 8:15 a.m. He first spoke with Findley, who apprised him of the situation. Findley did not repeat any of Defendant's statements to Officer Junkin. Officer Junkin then approached Defendant and advised him of his <u>Miranda</u> rights. Defendant stated that he understood his rights. Officer Junkin questioned Defendant, who revealed that he intended to have oral sex with K.L. and that he knew K.L. was 16.

Defendant was handcuffed and transported to the police station. Later that morning, he was questioned by Detective Cameron Ferguson. The interview was recorded. Defendant mentioned that he was diabetic. He was given food and water, but refused the offer to see a medic. Defendant was reminded of his <u>Miranda</u> rights and interviewed. During the interview, he again confessed to knowing that K.L. was a minor and that he intended to have oral sex with her.

## LEGAL BACKGROUND

Defendant is charged with On-Line Enticement, a violation of 18 U.S.C. § 2422(b):

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). The elements of an offense under § 2422(b) are that "[the defendant], using a means of interstate commerce, 'knowingly (1) attempted to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute

3 - OPINION & ORDER

a criminal offense.'" United States v. Tello, 600 F.3d 1161, 1164-65 (9th Cir. 2010) (quoting United States v. Goetzke, 494 F.3d 1231, 1234-35 (9th Cir. 2007) (per curiam)).  As to the last element, the indictment references Sexual Abuse in the third degree in violation of ORS § 163.415.  "A person commits the crime of sexual abuse in the third degree if:  (a) The person subjects another person to sexual contact and:  (A) The victim does not consent to the sexual contact; or (B) The victim is incapable of consent by reason of being under 18 years of age[.]"  ORS § 163.415.  Sexual Abuse in the third degree is a Class A misdemeanor.  Id.

## DISCUSSION

I.      Motion to Dismiss

Defendant raises three arguments in support of his motion to dismiss the indictment:  (1) the government's interpretation of 18 U.S.C. § 2422(b) would create an absurd result, (2) 18 U.S.C. § 2422(b) should be construed against the harsher punishment under the rule of lenity, and (3) 8 U.S.C. § 2422(b) should be construed to exclude misdemeanor conduct under the doctrine of constitutional avoidance, so that the Eighth Amendment will not be violated.[1]  Def.'s Memo. Supp. Mot. Dismiss Indictment ("Def.'s Memo."), 14, 28, 29.  All of these arguments have been recently addressed in United States v. Shill, No. 10-CR-493-BR, 2012 U.S. Dist. LEXIS 20760 (D. Or. Feb. 17, 2012).  The factual allegations in Shill are very similar to the allegations in this case.  In Shill, the defendant allegedly "used the internet via his cell phone in an attempt to entice a 16-year-old female high-school student into engaging in unlawful sexual activity with him."  Shill, 2012 U.S. Dist. LEXIS 20760, at *3.  At the hearing, Defendant conceded that nothing distinguishes Shill from this case.

---

[1] Although Defendant moves to dismiss the entire indictment, he only presents arguments to support dismissing the first count for On-line Enticement, and none for the second count for Interstate Travel for Illicit Sexual Purposes.

4 - OPINION & ORDER

Defendant first argues that § 2422(b) should be interpreted to exclude the alleged conduct, Sexual Abuse in the third degree—a misdemeanor under state law.[2] If not, the "absurd result" is that a misdemeanor under state law would be subject to the 10-year mandatory minimum sentence imposed by § 2422(b). In other words, Defendant's conduct under state law (without the use of a cell phone) would only be subject to a maximum penalty of one year, which is a stark contrast to the 10-year minimum penalty under § 2422(b). Defendant argues that Congress did not intend this "absurd result"—that a penalty would increase so severely "merely because a cellphone was involved." Def.'s Memo., 14.

As in Shill, Defendant cites to three Supreme Court cases[3] to support his argument. I agree with Judge Brown's thoughtful analysis in Shill and see no reason to depart from her conclusion that § 2422(b) "encompasses a defendant's attempt to entice, to persuade, or to coerce a minor to engage in physical sexual activity that is a misdemeanor under state law." Shill, 2012 U.S. Dist. LEXIS 20760, at *23. There is nothing in the case law or legislative history which suggests that Congress did not intend the express language of the statute, which refers to "*any sexual activity* for which any person can be charged with *a criminal offense*." 18 U.S.C. § 2422(b) (emphasis added). To the contrary, it appears that Congress intended to severely punish those who commit sex offenses against children. Congress could easily have chosen to limit the offenses in § 2242 to felonies. It did not. I cannot find that Congress's decision was inadvertent. Nor can I say that the result is absurd.

---

[2] The indictment identifies the criminal offense as Sexual Abuse in the third degree. Defendant's alleged conduct towards K.L. is also Sexual Abuse in the second degree, which is a Class C felony. ORS § 163.425(1)(a); State v. Stamper, 106 P.3d 172 (Or. Ct. App. 2005) (victim under age 18 is incapable of consent with respect to ORS § 163.425).

[3] Lewis v. United States, 523 U.S. 155 (1998), Abuelhawa v. United States, 556 U.S. 816 (2009), and Johnson v. United States, 130 S. Ct. 1265 (2010).

5 - OPINION & ORDER

Defendant's next argument urges this court to apply the rule of lenity because § 2422(b) is ambiguous. The exact same argument was raised in Shill. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." United States v. Nader, 542 F.3d 713, 721 (9th Cir. 2008) (quotation omitted). Like Judge Brown, I do not find that § 2422(b) is ambiguous. See Shill, 2012 U.S. Dist. LEXIS 20760, at *23. Therefore, the rule of lenity is inapplicable.

Defendant's final argument, that under the doctrine of constitutional avoidance, this court should avoid violating the Eighth Amendment's prohibition of cruel and unusual punishment by interpreting § 2422(b) to exclude attempted misdemeanor conduct. The doctrine requires that a "statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." Almendarez-Torres v. United States, 523 U.S. 224, 237 (1998) (quotation omitted). If there is "serious doubt" about a statute's constitutionality, the Court must "ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (quoting Crowell v. Benson, 285 U.S. 22, 62 (1932)). The Ninth Circuit has not addressed whether § 2422(b) raises Eighth Amendment concerns, but the Sixth, Seventh, and Tenth Circuits have all ruled that it does not. See Shill, 2012 U.S. Dist. LEXIS 20760, at *27-28 (citing United States v. Hughes, 632 F.3d 956, 959-60 (6th Cir. 2011); United States v. Nagel, 559 F.3d 756, 763-64 (7th Cir. 2009); United States v. Butters, 267 Fed. Appx. 773, 2008 WL 552483, at *4 (10th Cir. 2008)). Because I do not find that the Eighth Amendment is implicated in this case, the doctrine of constitutional avoidance is inapplicable.

Defendant's motion to dismiss the indictment is denied.

/ / /

6 - OPINION & ORDER

II.     Motion to Suppress

Badalamenti seeks to suppress statements that he made to Officer Junkin at K.L.'s house and to Detective Ferguson at the police station. Defendant makes two arguments in support of suppressing his statements. First, Defendant implies that the interrogation began with K.L.'s uncle, Findley, and that the "mid-stream" Miranda warnings were ineffective. Second, Defendant argues that his statements were not voluntary.

A.     Midstream Miranda

A "midstream recitation of [Miranda] warnings after [an] interrogation and unwarned confession [does] not effectively comply with Miranda's constitutional requirement[.]" Missouri v. Seibert, 542 U.S. 600, 604 (2004). "[A] statement repeated after a warning in such circumstances is inadmissible." Id. An impermissible "two-step interrogation strategy" is the "deliberate with-holding of the Miranda warning until the suspect confessed, followed by a Miranda warning and a repetition of the confession already given." United States v. Williams, 435 F.3d 1148, 1154 (9th Cir. 2006). There are two considerations in determining whether the post-warning statements should be excluded: (1) whether the interrogator used the two-step interrogation deliberately, id. at 1159, and (2) whether the midstream Miranda warnings "adequately and effectively apprised the suspect that he had a 'genuine choice whether to follow up on [his] earlier admission'", id. at 1160 (quoting Seibert, 542 U.S. at 615).

"[I]n determining whether the interrogator deliberately withheld the Miranda warning, courts should consider whether objective evidence and any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the Miranda warning." Id. at 1158 (citations omitted). "[O]bjective evidence would include the timing, setting and completeness of the prewarning interrogation, the continuity of

7 - OPINION & ORDER

police personnel and the overlapping content of the pre- and postwarning statements." Id. If there is no finding of deliberateness, then the admissibility of postwarning statements is governed by Oregon v. Elstad, 470 U.S. 298 (1985). Seibert, 542 U.S. at 622. In Elstad, the Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." Elstad, 470 U.S. at 318.

If the court finds that use of the two-step interrogation was deliberate, then the effectiveness of the midstream Miranda warning must be evaluated. Id. at 1160. "[T]he court must address (1) the completeness and detail of the prewarning interrogation, (2) the overlapping content of the two rounds of interrogation, (3) the timing and circumstances of both interrogations, (4) the continuity of police personnel, (5) the extent to which the interrogator's questions treated the second round of interrogation as continuous with the first and (6) whether any curative measures were taken." Id.

The government does not intend to offer any statements that Defendant made to Findley, K.L.'s uncle. Gov't.'s Resp., 7. Nevertheless, Defendant asserts that Findley should have given Defendant his Miranda rights because he made statements to Findley that were the result of custodial interrogation. Def.'s Memo., 4. Consequently, Defendant argues that the statements he made to Officer Junkin and Detective Ferguson should be suppressed because the midstream Miranda warnings were ineffective.

A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Yarborough v. Alvarado, 541 U.S. 652, 661 (2004) (citing Miranda v. Ariz., 384 U.S. 436, 444 (1966)). "[C]ustody must be determined based on how a reasonable person in

8 - OPINION & ORDER

the suspect's situation would perceive his circumstances." Id.  I find that there was no custodial interrogation.  Findley testified that he told Defendant that he was there because of his niece, and not as a law enforcement officer.  Although Findley patted Defendant down and was carrying a firearm, he did not display the firearm.  Most importantly, Findley did not interrogate Defendant.  Findley had no need to question Defendant because he already knew why Defendant was at his niece's house.  Even if Defendant did not feel free to leave, there is no evidence that Findley interrogated Defendant.  Findley was not required to give Defendant Miranda warnings because there was no custodial interrogation.

There is no merit to Defendant's argument that Findley worked with the Newberg-Dundee Police in a two-step interrogation strategy.  This argument requires finding that Findley interrogated Defendant, and I have just concluded otherwise.  Out of Defendant's presence, Findley briefed Officer Junkin upon his arrival, but did not repeat any of Defendant's statements.  At the hearing, Defendant argued that he did not know that Findley had not repeated any of his statements to Officer Junkin, implying that Defendant perceived Findley to be working with the Newberg-Dundee Police.  Defendant did not testify at the hearing, and thus, there is no evidence in the record on this issue.  Despite what Defendant may have perceived, there was no two-step interrogation strategy because Findley did not interrogate Defendant.  In contrast, the interrogating officer in Seibert admitted that he deliberately withheld Miranda warnings for 30-40 minutes of questioning at the police station until he elicited a confession.  Seibert, 542 U.S. at 605-06.  If there is no deliberate two-step interrogation, then under Elstad, Defendant is capable of waiving his Miranda rights if the prewarning statements were the result of uncoercive questioning.

/ / /

B.    Voluntary Statements

Defendant argues that his post-<u>Miranda</u> statements were not voluntary. An officer's obligation to give a suspect <u>Miranda</u> warnings before an interrogation extends only to those instances when the individual is "in custody." <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977). For a statement made during a custodial interrogation to be admissible, any waiver of constitutional rights must be voluntary, knowing, and intelligent. <u>Miranda v. Arizona</u>, 384 U.S. 436, 479 (1966). A valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-75 (1979).

The government has the burden of showing a valid waiver. <u>Butler</u>, 441 U.S. at 373. The test for voluntariness is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." <u>Derrick v. Peterson</u>, 924 F.2d 813, 817 (9th Cir. 1990) (quoting <u>United States v. Leon Guerrero</u>, 847 F.2d 1363, 1366 (9th Cir. 1988)). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986).

Defendant argues that "his emotional condition, the number of interrogations, the personnel present, the psychological pressures exerted and other factors" prove that Defendant's statements were not voluntary. Def.'s Memo., 7. There are no facts to show that Officer Junkin or Detective Ferguson threatened Defendant during the interrogations. Officer Junkin testified that he asked Defendant open-ended questions. He did not threaten Defendant, nor did he draw his weapon. Similarly, Detective Ferguson's interrogation proceeded in a calm, non-threatening

manner. Defendant was offered food, water, and a medic out of concern for his diabetes. Although Defendant was emotional and remorseful during the 40-minute interrogation, he stated that he understood his rights, and continued to speak with Detective Ferguson. See Ex. 1 (recorded interview at Newberg-Dundee police station). I find that Defendant's statements to Officer Junkin and Detective Ferguson were voluntary.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss (#32) and his motion to suppress (#30) are denied.

IT IS SO ORDERED.

Dated this 16 day of November, 2012.

/s/ Marco Hernandez
MARCO A. HERNANDEZ
United States District Judge